USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #:
DATE FILED: 7/15/09

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

---

PETER DÖHLE SCHIFFAHRTS KG,

Plaintiff,

- against -

SESA GOA LIMITED,

Defendant.

---

OPINION AND ORDER

08 Civ. 10277 (SAS)

SHIRA A. SCHEINDLIN, U.S.D.J.:

## I. INTRODUCTION

On May 21, 2009, this Court granted an amended order attaching the assets of Sesa Goa Limited ("Sesa Goa"). Sesa Goa now moves to vacate or reduce that attachment. For the following reasons, Sesa Goa's motion to vacate or reduce the attachment is denied.

## II. BACKGROUND

### A. Facts

#### 1. The Parties

Peter Döhle Schiffahrts KG ("Döhle") is a business entity organized and existing under the laws of Germany.[1] Döhle is in the business of operating

---

[1] *See* First Amended Verified Complaint ("Am. Compl.") ¶ 2.

and chartering vessels in international commerce.[2] While Döhle is a German company, it has also acquired a majority interest in and partnered with Danautic Ship Management Pvt. Ltd., an Indian-based company, resulting in Döhle Danautic India Pvt. Ltd. ("Döhle Danautic").[3] Sesa Goa is a corporation or other business entity operating out of Panjim, Goa in India[4] and organized and existing under the laws of India or another foreign jurisdiction.[5] Sesa Goa is the flagship company of the Sesa Group and is India's largest exporter of iron ore in the private sector.[6] Sesa Goa is generally involved in the business of iron ore mining,

---

2 *See id.* ¶ 3.

3 *See* 6/19/09 Affidavit of Sushil Gupta, Director of Finance for Sesa Goa ("Gupta Aff."), ¶ 28 (incorporating a news article documenting the affiliation of Döhle and Döhle Danautic). Sesa Goa claims that Döhle Danautic is based in Mumbai and operates offices in Goa. *See* Sesa Goa's Memorandum of Law in Support of Its Motion to Vacate ("Sesa Goa's Mem."), at 4.

4 *See* Gupta Aff. ¶ 4.

5 *See* Am. Compl. ¶ 4. Neither Sesa Goa's verified answer nor its affidavits clarified whether Sesa Goa is an Indian entity or an entity of another foreign jurisdiction. Sesa Goa is making a restricted appearance in this case, pursuant to Supplemental Admiralty Rule E(8) of the Federal Rules of Civil Procedure, solely for the purpose of vacating the attachment. *See* Fed. R. Civ. P. Supp. Rule E(8).

6 *See* Gupta Aff. ¶ 5.

exporting, and the manufacturing of metallurgical coke.[7]

### 2. The Contract of Affreightment

Sesa Goa and Döhle entered into a Contract of Affreightment ("COA") dated July 14, 2007.[8] Under the COA, Döhle agreed to provide vessels and Sesa Goa agreed to provide coal cargoes for three seasons – 2007 to 2008, 2008 to 2009, and 2009 to 2010.[9] Those cargoes were to be transported from Australia to India, with the freight payable in varying amounts of U.S. dollars per metric ton, depending on the port of loading.[10] The COA provided for cargo quantities of 360,000 metric tons with a 10% leeway more or less in the owners' option for the 2007 to 2008 season, and 370,000 metric tons with the same option for the 2008 to 2009 and 2009 to 2010 seasons.[11]

Four clauses of the COA are particularly relevant here. *First*, clause 44 states that the COA is governed by English law and that each party expressly

---

[7] *See id.* ¶ 6. Coal is required in order to manufacture pig iron and metallurgical coke. *See* Am. Compl. ¶ 5.

[8] *See* Am. Compl. ¶ 6.

[9] *See id.*

[10] *See id.* ¶ 7.

[11] *See id.* ¶ 8.

submits to the jurisdiction of the English courts.[12] *Second*, clauses 48 and 49 contain the COA's "force majeur" language. Neither party is held responsible for a litany of occurrences, such as "any . . . cause or causes beyond the control" of the parties.[13] Both parties agree in the COA "that circumstances may arise which could not have been foreseen at the time [the COA] was executed."[14] In the event of such circumstances, the parties are to "use their best efforts to solve any problem due to such unforeseeable circumstances in a spirit of mutual understanding and cooperation."[15] *Third*, clause 50 contains the COA's arbitration language, mandating that any dispute arising out of the COA be referred to arbitration in London.[16]

**3. The Dispute Under the COA**

Both parties were satisfied with the arrangement under the COA during the entire 2007 to 2008 season through the first three shipments for 2008 to

---

[12] 7/14/07 Contract of Affreightment, Ex. A to Am. Compl, at 12, cl. 44.

[13] *Id.* cl. 48.

[14] *Id.* cl. 49.

[15] *Id.*

[16] *Id.* cl. 50.

2009.[17] However, in a letter dated November 14, 2008, Sesa Goa informed Döhle that it could no longer perform the COA, leaving five of the 2008 to 2009 season shipments outstanding and all of the 2009 to 2010 season outstanding.[18] Sesa Goa stated that its customers throughout the world reduced production, that pig iron manufacturers have felt the effects of the recession and are on the verge of shutdown, and that coke inventory is being built up because of low demand.[19] All of these factors, Sesa Goa contended in the letter, "resulted in frustration or cancellation of the COA."[20] Sesa Goa said that Döhle should not nominate any vessels for the remainder of the COA.[21] In a letter dated November 19, 2008, Döhle refused to accept Sesa Goa's position that the contract was frustrated due to force majeur and notified Sesa Goa that the dispute had been referred to

---

[17] *See* Am. Compl. ¶ 9.

[18] *See id.* *See also* 11/14/08 Letter from Sesa Goa to Döhle ("Repudiation Letter"), Ex. B to Am. Compl. At the time of this opinion, the 2008 to 2009 season has finished, and the 2009 to 2010 season is set to start in November, 2009.

[19] *See* Repudiation Letter.

[20] *Id.*

[21] *See id.*

arbitration.[22]

### B. Procedural History

#### 1. The First Verified Complaint and Rule B Attachment

On November 25, 2008, Döhle filed a Verified Complaint seeking attachment of Sesa Goa's assets in the sum of $12,840,135.00.[23] This sum included $4,152,392.00 for the remainder of the 2008 to 2009 season, $6,959,642.00 for the entire 2009 to 2010 season, interest on the two preceding amounts of at least $1,405,591.00, and $322,500.00 in legal fees, arbitrator's fees, and costs.[24] This Court granted Döhle's application for attachment on December 10, 2008.[25] That order subsequently expired on March 10, 2009.[26] In the meantime, Sesa Goa initiated an action in India to enjoin Döhle from proceeding

---

[22] *See* 11/19/08 Letter from Döhle to Sesa Goa, Ex. C to Am. Compl., at 2.

[23] *See* First Verified Complaint ("Compl.") ¶ 12.

[24] *See id.* ¶¶ 9, 11.

[25] *See* 12/10/08 Ex Parte Order for Process of Maritime Attachment, 08 Civ. 10277, Docket No. 3.

[26] *See* 3/10/09 Order of Discontinuance, 08 Civ. 10277, Docket No. 6. This Order dismissed the action without prejudice but provided for a sixty day period for counsel on either side to apply for restoration of the action to the calendar if settlement was not effected.

in the London arbitration.[27]

### 2. The First Amended Verified Complaint and Second Rule B Attachment

On April 2, 2009, the Indian Court lifted its interim injunction enjoining Döhle from proceeding with the arbitration in London and the arbitration has since resumed.[28] On May 6, 2009, this Court granted Döhle's request to re-open the case and to consider granting an amended order.[29] The First Amended Verified Complaint, filed on May 15, 2009, alleges that Sesa Goa and Döhle completed two transactions in satisfaction of Sesa Goa's obligations for the seventh and eighth shipments for the 2008 to 2009 season.[30] Thus, Döhle alleged that it still remained entitled to damages for the fourth, fifth and sixth shipments of the 2008 to 2009 season, along with the entire 2009 to 2010 season.[31] Döhle further alleged that Sesa Goa did not retract its alleged repudiation of the COA.[32] Accordingly, Döhle sought the attachment of Sesa Goa's assets in the sum of

---

27 *See* Am. Compl. ¶ 11.

28 *See id.* ¶ 12.

29 *See* 5/6/09 Endorsed Letter From LeRoy Lambert to this Court, at 1.

30 *See* Am. Compl. ¶ 13.

31 *See id.* ¶¶ 14, 15.

32 *See id.* ¶ 15.

$11,085,120.57.[33] This sum included $2,605,663.00 in relief for the three outstanding shipments from the 2008 to 2009 season, $6,948,435 for the entire 2009 to 2010 season, interest on the two preceding amounts of at least $1,208,522.57, and finally $322,500.00 in legal fees, arbitrator's fees, and costs.[34]

On May 21, 2009, this Court entered an amended order of attachment for $10,962,620.57.[35] Shortly thereafter, Döhle served the writ of maritime attachment on various New York banks. So far, $2,575,639.27 of Sesa Goa's electronic fund transfers through New York banks have been garnished.[36] On June 19, 2009, Sesa Goa moved to vacate the writ of maritime attachment, or, in the alternative, to reduce the amount of security called for in the attachment.

### C. Sesa Goa's Factual Allegations

Sesa Goa makes several allegations in its motion and supporting affidavits. *First*, Sesa Goa claims that Döhle Danautic – Döhle's Indian joint

---

33 *See id.* ¶ 21.

34 *See id.* ¶¶ 18, 20, 21.

35 *See* 5/21/09 Amended Order Directing Clerk to Issue Process of Maritime Attachment and Garnishment, 08 Civ. 10277, Docket No. 10.

36 *See* 6/5/09 Letter from LeRoy Lambert to A. N. Joshi, Chief Marketing Officer for Sesa Goa, Ex. C to Gupta Aff., at 1.

venture – was the true representative in all matters concerning the COA.[37] In particular, Sesa Goa claims that Döhle Danautic negotiated the COA and served as the agent in carrying out the obligations under the COA, even though Sesa Goa admits that the COA was ultimately a contract with Döhle and not Döhle Danautic.[38] *Second*, Sesa Goa argues that it never repudiated its obligations for the 2009 to 2010 season.[39] *Third*, Sesa Goa claims that Döhle never averred that the Indian court lacked personal jurisdiction over Sesa Goa.[40] *Fourth*, Sesa Goa claims that Döhle has the opportunity to obtain an order from the Indian court, pursuant to Section 9 of the Indian Arbitration and Conciliation Act of 1996 (the "IACA"), to secure the amount claimed in the London arbitration.[41] *Fifth*, Sesa

---

37 *See* Sesa Goa's Mem. at 5. However, many of the noted contacts occurred *after* the dispute surrounding the COA. *See id.*

38 *See id.* at 4-5.

39 *See id.* at 5.

40 *See id.* at 6.

41 *See id.* Sesa Goa implies that this provision of the IACA applies to the instant dispute even though the arbitration is taking place outside of India. Sesa Goa claims that the Indian Supreme Court held in *Bhatia Int'l v. Bulk Trading S.A.*, (2002) 4 SCC 10, that the IACA applies to a dispute unless the parties by agreement – express or implied – exclude its provisions. *See* 6/19/09 Affidavit of Atul Rajadhyaksha, Attorney for Sesa Goa ("Rajadhyaksha Aff. I"), at ¶ 12. Further, it claims that the COA does not reject the application of the IACA. *See id.*

Goa claims that the London arbitration is proceeding, with both parties having nominated potential arbitrators.[42]

## III. LEGAL STANDARD

### A. Vacatur of Maritime Attachment

Maritime attachments serve dual purposes: "(1) to obtain jurisdiction of the [defendant] in personam through [its] property, and (2) to assure satisfaction of any decree in [plaintiff's] favor."[43] Because the two aims may not be separated, "security cannot be obtained except as an adjunct to obtaining jurisdiction."[44]

Supplemental Rules B and E of the Federal Rules of Civil Procedure govern attachment of assets in maritime actions. If the defendant is not present within a district, Rule B allows for the attachment of the defendant's assets up to the amount for which the plaintiff has a valid prima facie claim.[45]

If the court authorizes the attachment of assets, the defendant is entitled, pursuant to Rule E, to "a prompt hearing at which the plaintiff shall be

---

42 *See* Sesa Goa's Mem. at 7.

43 *Seawind Compania, S.A. v. Crescent Line, Inc.*, 320 F.2d 580, 581-82 (2d Cir. 1963).

44 *Id.* at 582.

45 *See* Fed. R. Civ. P. Supp. Rule B(1)(a).

required to show why the arrest or attachment should not be vacated."[46] The Second Circuit has held that, in addition to meeting the service and filing requirements of Rules B and E, a plaintiff seeking to show why an attachment should not be vacated must demonstrate that "1) it has a valid prima facie admiralty claim against the defendant;[47] 2) the defendant cannot be found within the district; 3) the defendant's property may be found within the district; and 4) there is no statutory or maritime law bar to the attachment."[48] "Rule E(4)(f) clearly places the burden on the plaintiff to show that an attachment was properly ordered and complied with the requirements of Rules B and E."[49] "In determining whether the plaintiff has met this burden, a district court may consider evidence

---

[46] *Id.* Rule E(4)(f).

[47] "[T]he majority of courts in this district have held that the standard for determining whether a plaintiff has asserted a 'valid prima facie admiralty claim' is the 'prima facie standard,' rather than the more demanding 'fair probability' or 'reasonable grounds' standards." *Padre Shipping, Inc. v. Yong He Shipping*, 553 F. Supp. 2d 328, 331-32 (S.D.N.Y. 2008) (citing *Dolco Invs., Ltd. v. Moonriver Dev., Ltd.*, 486 F. Supp. 2d 261, 266 (S.D.N.Y. 2007)). While there is some division within this district over the question of what constitutes a "valid prima facie admiralty claim," *see id.*, there seems to be little disagreement that the "inquiry focuses on whether the plaintiff has [pled] a claim cognizable in admiralty." *Ronda Ship Mgmt. v. Doha Asian Games Org. Comm.*, 511 F. Supp. 2d 399, 404 (S.D.N.Y. 2007).

[48] *Aqua Stoli Shipping Ltd. v. Gardner Smith Pty Ltd.*, 460 F.3d 434, 445 (2d Cir. 2006).

[49] *Id.* at 445 n.5.

outside of the pleadings."[50]

Additionally, district courts have limited equitable discretion to vacate maritime attachments that comply with Rule B. In *Aqua Stoli*, the Second Circuit held that:

> a district court may vacate an attachment if the defendant shows at the Rule E hearing that 1) the defendant is subject to suit in a convenient adjacent jurisdiction; 2) the plaintiff could obtain *in personam* jurisdiction over the defendant in the district where the plaintiff is located; or 3) the plaintiff has already obtained sufficient security for the potential judgment, by attachment or otherwise.[51]

With regard to the second factor, a defendant can make this showing and have a maritime attachment vacated if "the plaintiff and defendant are both present in the same district and would be subject to jurisdiction there, but the plaintiff goes to another district to attach the defendant's assets."[52] Further, while the definition of "district" has been contested by courts, some cases in this District have held that "the term 'district' is a term of art under federal jurisprudence and refers to a

---

[50] *Transfield ER Cape Ltd. v. STX Pan Ocean Co.*, No. 09 Civ. 1250, 2009 WL 691273, at *1 (S.D.N.Y. Mar. 17, 2009) (citations omitted).

[51] 460 F.3d at 445.

[52] *Id.* at 444-45.

district within the United States Federal Court System."[53]

**C. Reduction of Maritime Attachment**

"Whenever security is taken the court may, on motion and hearing, for good cause shown, reduce the amount of security given[.]"[54] In a recent decision, the Second Circuit held that a court "may assess the reasonableness of plaintiff's claimed damages and weigh other equitable considerations when it sets or reduces a security[.]"[55] "District courts . . . should be careful not to set or reduce unfairly the security required, especially where the likely recovery is difficult to assess preliminarily."[56] A reduction in security is "freely granted upon a showing that the [attachment] is excessive . . . . [I]n an attachment proceeding,

---

53 *Prestigious Shipping Co. v. Agrocorp Int'l PTY Ltd.*, No. 07 Civ. 7107, 2007 WL 2847210, at *1 (S.D.N.Y. Oct. 1, 2007). *Accord Foolproof Navigation S.A. v. Trimarine Corp., S.A.*, No. 08 Civ. 9833, 2009 WL 1675079, at *1 (S.D.N.Y. June 11, 2009) ("[T]he word 'district' as used in a federal statute is a term of art referring to the district[ courts.]"). *Accord Transfield*, 2009 WL 691273, at *4-5 (vacating an attachment because the parties were both present in North Korea); *OGI Oceangate Transp. Co. v. RP Logistics Pvt. Ltd.*, No. 06 Civ. 9441, 2007 WL 1834711, at *7 (S.D.N.Y. June 26, 2007) (finding equitable vacatur to be appropriate where both plaintiff and defendant were present in India during previous arrest proceedings).

54 Fed. R. Civ. P. Supp. Rule E(6).

55 *Transportes Navieros y Terrestres S.A. DE C.V. v. Fairmount Heavy Transport N.V.*, — F. 3d —, 2009 WL 1756437, at *13 (2d Cir. June 23, 2009).

56 *Id.* at *14 n.9.

the plaintiff need not prove its damages with exactitude. But the court must be satisfied that the plaintiff's claims are not frivolous."[57] When a particular element of damages is recoverable in a London proceeding that "raises a question of contract interpretation," it is more appropriate "for the English court to resolve [that issue] in due course."[58]

## IV. DISCUSSION

### A. Sesa Goa's Legal Claims

Sesa Goa advances three main arguments as to why the attachment order should be vacated. *First*, Sesa Goa claims that Döhle can exercise in personam jurisdiction over Sesa Goa in India because Sesa Goa is headquartered in Goa.[59] *Second*, Sesa Goa further claims that Goa is also a convenient location for Döhle because Döhle appeared in a prior action in India and because Döhle's new joint venture conducts business there.[60] *Third*, Sesa Goa claims that London

---

[57] *Dongbu Express Co. v. Navios Corp.*, 944 F. Supp. 235, 237 (S.D.N.Y. 1996) (citations omitted).

[58] *Ronda Ship Mgmt.*, 511 F. Supp. 2d at 406 (reducing the maritime attachment on other grounds, namely because the original attachment included a charter-party that was not at issue in the complaint).

[59] *See* Sesa Goa's Mem. at 9.

[60] *See id.* at 10. As a corollary to this claim, Sesa Goa points to the possible availability of relief for Döhle under the Indian Arbitration Act.

is a convenient jurisdiction for Döhle and that Sesa Goa is subject to jurisdiction there for the purposes of seeking security.[61]

Alternatively, if this Court does not vacate the order, Sesa Goa asks the Court to reduce it. *First*, Sesa Goa claims generally that the damage award should only include the three missed shipments. Sesa Goa claims that the COA remains in effect, as evidenced by the recent shipments between the parties, and so the 2009 to 2010 season should not have been included in the calculation.[62] Further, Sesa Goa claims that the contract could not have been breached with respect to the 2009 to 2010 season because that season's shipments are not to be established until July, 2009.[63] *Second*, Sesa Goa claims that Döhle should have mitigated its damages during the three months it did not receive shipments in the 2008 to 2009 season and should further mitigate its damages for the 2009 to 2010 season by finding a new party for those shipments.[64]

---

61 *See id.*

62 *See id.* at 12-13 ("Sesa Goa has continued to perform its obligations by providing coal cargoes, subsequent to the three missed shipments, for March and April 2009 in the 2008 to 2009 year.").

63 *See id.* at 13.

64 *See id.* at 14.

## B. Equitable Vacatur of the Attachment

### 1. Döhle Has Fulfilled Its Burden Under the First Step of the *Aqua Stoli* Standard

The parties do not contest that Döhle has fulfilled its burden under *Aqua Stoli*.[65] *First*, the facts in this case undoubtedly establish a prima facie admiralty claim. The parties entered into a COA and one of the parties allegedly breached that contract. *Second*, Sesa Goa cannot be found in the Southern District of New York. *Third*, as evidenced by the subsequent attachments of electronic fund transfers, Sesa Goa's property can be found in this district. *Fourth*, there is no statutory or maritime bar to this attachment, and Sesa Goa does not contend otherwise. Thus, the burden shifts to Sesa Goa to demonstrate why this Court should vacate the attachment.

### 2. Sesa Goa Has Not Met Its Burden Under *Aqua Stoli*

Sesa Goa does not rely on the first or third *Aqua Stoli* factors. It does not contend that it is subject to suit in a "convenient *adjacent* jurisdiction" nor does it claim that the security Döhle has already attached is sufficient to satisfy a potential judgment. Rather, Sesa Goa relies on the second factor, which permits vacatur if Döhle can obtain in personam jurisdiction over Sesa Goa in *the* district

---

65 460 F.3d 434.

where Döhle is located. Sesa Goa contends that both India and London are jurisdictions that fulfill those conditions.[66]

The Second Circuit has not clarified or expanded on the meaning of *Aqua Stoli*'s second factor. Indeed, this factor only references "the" district where the plaintiff is located, not "a" or "any" district where the plaintiff is located. This concept closely aligns with the legal term "domicile."[67] Here, Döhle's domicile is indisputably Hamburg – *the* district where Döhle is located.

Both of Sesa Goa's arguments fail for one simple reason: neither India nor London is Hamburg. Further, all of Sesa Goa's carefully constructed arguments surrounding India are meritless. *First*, the fact that *Sesa Goa* is domiciled in India is inconsequential under *Aqua Stoli* because the question is whether Döhle can obtain jurisdiction over Sesa Goa in Hamburg, the district where *Döhle* is domiciled. *Second*, Sesa Goa's contentions that Döhle Danautic's presence in India means Döhle is "located" in India impermissibly broadens the

---

66 The following analysis assumes, arguendo, that the word "district" does not exclusively refer to United States federal districts. Because Sesa Goa is not located in any United States federal district, and because vacatur is not warranted even if the jurisdiction is international, this Court need not define the word "district" as used in *Aqua Stoli*.

67 *See Black's Law Dictionary* 523 (8th ed. 2004) (defining "domicile" as "*[t]he* residence of a person or corporation for legal purposes") (emphasis added).

holding of *Aqua Stoli*. The fact that Döhle Danautic might have been Döhle's agent does not alter the conclusion that Döhle is *the* proper party to this dispute.[68] *Third*, Sesa Goa's contention that Döhle's limited appearance in the Indian action means that Döhle is "located" in India is simply wrong. Döhle objected to the Indian Court's jurisdiction throughout the litigation.[69]

Sesa Goa's arguments surrounding London are also fruitless. Döhle's

---

[68] Döhle's affidavit from its Indian attorney claims that the activities of Döhle Danautic do not subject it to personal jurisdiction in India. *See* 6/29/09 Affidavit of Ethelwald Oswald Mendes, Döhle's Indian Attorney, at ¶ 9. Sesa Goa submits an affidavit contesting that conclusion. *See* 7/2/09 Affidavit of Atul Rajadhyaksha ¶ 11 (claiming that Döhle Danautic's actions might subject Döhle to jurisdiction in India). However, this Court need not resolve that dispute because even if Döhle is subject to jurisdiction in India that does not mean it is domiciled in India for the purposes of *Aqua Stoli*. Further, Sesa Goa conceded several times throughout the documents provided to this Court – for example, in a letter to an Indian governmental agency – that Döhle Danautic was merely a broker to the COA and that the COA was an agreement with Döhle alone. *See* 6/28/07 Letter from Sesa Goa to Insa, Mumbai, Ex. 1 to 6/29/09 Declaration of Christian Lund, Head of Döhle's Chartering Department of the Division of Dry Bulk.

[69] *See, e.g.*, Affidavit u/06 R15 of CPC, 1908 filed by M/s Peter Doehle Schiffarts KG in the Special Civil Suit No. 108/2008/B, Ex. A to Rajadhyaksha Aff. I, at ¶ 3 ("This Written Statement is being filed without prejudice to [Döhle's] right to challenge the jurisdiction of the Hon[ora]ble Court to adjudicate on the subject matter of the suit . . . and should not be construed as submission to the jurisdiction of the Hon[ora]ble Court."). Further, like the preceding Indian law argument regarding Döhle Danautic, I decline to decide whether Döhle's limited appearance in the Indian Court leaves open the option for an attachment pursuant to the Indian Arbitration Act. Indeed, this allegation is heavily contested by the parties' Indian attorneys, and this Court is not persuaded that it should exercise its equitable power to vacate the attachment because of such a possibility.

amenability to jurisdiction in London does not mean that London is also Döhle's domicile.[70] That jurisdiction remains Hamburg. Accordingly, the attachment cannot be vacated.

**C. Reduction of the Attachment**

This dispute surrounds an explicit repudiation of the COA.[71] While Sesa Goa correctly notes Döhle's duty to mitigate, Sesa Goa offers no evidence – in the form of affidavits or otherwise – that it is possible for Döhle to mitigate.

Döhle, on the other hand, has offered evidence through the affidavit of its English solicitor that under English law "the issue of mitigation does not arise."[72] That affidavit also provides a reasonable and detailed explanation for the

---

[70] The Second Circuit has not squarely addressed whether the mutual consent of the parties to the exercise of jurisdiction in a specific venue pursuant to a contract is equivalent to presence in that district under *Aqua Stoli*. However, in *Consub Del. LLC v. Schahin Engenharia Limitada*, the Circuit upheld a maritime attachment despite both parties' consent to specific and exclusive jurisdiction in England. *See* 543 F.3d 104, 113-14 (2d Cir. 2008).

[71] *See* Repudiation Letter (noting that certain occurrences "resulted in frustration or cancellation of the COA"). Other courts in similar situations have refrained from engaging in any contract interpretation. *See, e.g.*, *Glory Wealth Shipping Serv. Ltd. v. Five Ocean Corp.*, 571 F. Supp. 2d 531, 535 (S.D.N.Y. 2008) ("[W]hether Clause 31 prohibited the Iraq Voyage and whether Five Ocean repudiated the Time Charter are questions of contract law that are for the London arbitrators to decide, not for this Court."). Sesa Goa's allegations that it did not repudiate the COA because of the two recent shipments will be decided in the London arbitration.

[72] 6/29/09 Declaration of David Anthony Perry, London Solicitor, ¶ 16.

security demanded. Given the record, this Court cannot assess whether Sesa Goa's claims that Döhle could have or should have mitigated its damages are accurate.[73] Accordingly, Döhle's estimated damages appear reasonable as Sesa Goa attenuated three shipments in the 2008 to 2009 season and repudiated its obligations for the 2009 to 2010 season. Döhle is entitled to have the security amount remain in place until the completion of the London arbitration.[74]

## V. CONCLUSION

For the foregoing reasons, Sesa Goa's motion to vacate or reduce the attachment is denied. The Clerk of the Court is directed to close this motion (docket no. 29). A conference is scheduled for July 27, at 4:00 P.M.

---

[73] *See Transportes*, 2009 WL 1756437, at *13 (recognizing, in dicta, the holding in *Rolls Royce Indus. Power (India) v. M.V. Fratzis M.*, where because the court could not determine whether the defendants' factual assertions were accurate, it concluded that "the proper course is to refrain from disturbing the present attachment") (citing *Rolls Royce Indus. Power (India) v. M.V. Fratzis M.*, No. 95 Civ. 2630, 1995 WL 846690, at *9-11 (S.D.N.Y. July 24, 1995)).

[74] *See A.R.A. Anomina Ravannate di Armamento, SPA v. Heidmar Inc.*, No. 97 Civ. 1383, 1997 WL 615495, at *1 (S.D.N.Y. Oct. 6, 1997) (concluding that "plaintiff has more than established that the amount attached is reasonably necessary to secure plaintiff's claim"). *See also Transportes*, 2009 WL 1756437, at *13 ("[A] court may assess preliminarily the reasonableness of plaintiff's damages claim . . . and may evaluate this and other equitable considerations when evaluating whether good cause exists to reduce a security under Rule E(6).") (citations omitted).

SO ORDERED:

Shira A. Scheindlin
U.S.D.J.

Dated: New York, New York
July 15, 2009

**- Appearances -**

**For Plaintiff:**

LeRoy Lambert, Esq.
Blank Rome LLP
405 Lexington Avenue
New York, New York 10174
(212) 885-5000

**For Defendant:**

Michael C. Lynch, Esq.
Kelley Drye & Warren LLP
101 Park Avenue
New York, New York 10178
(212) 808-7800